The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provision of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with Hewitt, Coleman Associates, Inc., as the servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of his employment on May 13, 1996, which resulted in injuries to his right knee.
5. The plaintiff's average weekly wage was $350.00, which yields a compensation rate of $233.34 per week.
6. The issues for determination are:
 a. Was the plaintiff disabled after June 6, 1996, within the meaning of the Act, and if so, was the plaintiff's disability as a result of the admittedly compensable fall on May 13, 1996?
 b. Did the plaintiff refuse work suitable to his capacity after June 6, 1996?
 c. Is the defendant entitled to a credit for compensation paid after June 6, 1996?
7. The parties stipulated the following documents into the record:
a. I.C. Form 60, dated June 3, 1996,
b. I.C. Form 22 Wage Chart,
 c. Exhibit 1, fourteen pages from Pinehurst Surgical Clinic and Dr. Ward Oakley, Jr.,
 d. Exhibit 2, thirty pages from Dr. John Feagin of Duke University Medical Center,
e. Exhibit 3, nineteen pages, Recorded Statement,
 f. Exhibit 4, two pages, August 30, 1996 Administrative Decision and Order, and
 g. Exhibit 5, two pages, August 5, 1996 letter of Mr. Riordan to Mr. Lindler.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the compensable injury, the plaintiff was a twenty-two year old tenth grade educated male, who was employed on March 22, 1996 as a sanitation worker with defendant-employer. The plaintiff's duties included washing company trucks and employees' work boots.
2. Prior to beginning work for the defendant, the plaintiff underwent reconstructive surgery of the right anterior cruciate ligament on February 20, 1991, which was performed by Dr. Feagin. As a result of this surgery, the plaintiff retained a ten percent permanent partial impairment to the right lower extremity.
3. In July of 1995, the plaintiff underwent additional surgery on his right knee after an injury at home. During the surgery, a loose body was removed from the knee; and it was discovered that he had a significant articular defect of the lateral femoral condyle and instability of the cruciate ligament. Dr. Oakley recommended that the plaintiff have additional surgery to reconstruct the ACL, lateral femoral condyle, and lateral meniscal grafting for the right knee instability at plaintiff's last visit on January 11, 1996. Although the plaintiff experienced episodes of the right knee giving away on him, he elected to not have additional surgery for the instability. Between January 11, 1996 and May 17, 1996, the plaintiff did not require any medical treatment for his right knee.
4. Prior to beginning his employment with the defendant, the plaintiff was required to submit to a physical examination conducted by medical staff at the behest of the defendant-employer. During the course of this examination, the plaintiff was required to hop on one foot, which the plaintiff was able to do.
5. On May 13, 1996, the plaintiff was washing a truck; and as he turned and torqued his body, he experienced an injury in the right knee when his foot slipped. The plaintiff reported this injury to Johnny Ward, who was his supervisor, who referred him to the local hospital.
6. On May 17, 1996, the plaintiff was referred for treatment by orthopedist Dr. Ward Oakley, at which time the plaintiff was diagnosed with a right knee, lateral ligament sprain, right knee effusion, old ACL instability and right knee lateral femoral condyle, articular defect. Dr. Oakley ordered the plaintiff to remain out of work, use crutches and immobilizer, and to return to the doctor in two weeks. Dr. Oakley again recommended an ACL reconstruction and a lateral femur condyle and lateral meniscal grafting.
7. On May 31, 1996, the plaintiff returned to Dr. Oakley, at which time Dr. Oakley noted that the plaintiff "has had anterocruciate ligament reconstruction and that has gone to failure. However, he was doing fairly well until this injury at work on the 13th." A diagnostic arthroscopic procedure was performed on June 6, 1996, following which Dr. Oakley noted that the cartilage and joint surface looked good, and the only abnormality was the anterocruciate ligament rupture with instability. This condition was not related to the work injury of May 13, 1996, but was a pre-existing condition, and the pre-existing condition was not aggravated by the injury on May 13, 1996.
8. As a result of the May 13, 1996 injury by accident, the plaintiff was required to undergo arthroscopic surgery on his right knee on June 6, 1996 for diagnostic purposes. Following this surgery, it was determined that the plaintiff's need for additional treatment to the right knee was as a result of the pre-existing condition and not as a result of the May 13, 1996 injury. Dr. Oakley has opined that the plaintiff should be able to return to work four to six weeks following the procedure.
9. The defendant-employer had light duty sit-down work available for the plaintiff, which was within his restrictions; however, the plaintiff did not seek to accept the offered work. Following the diagnostic arthroscopic procedure on June 6, 1996, the plaintiff made no effort to contact the employer about returning to his job. Perry Parks, safety and training manager with the employer contacted the plaintiff after the procedure regarding the availability of his job; and at that time, the plaintiff did not agree to return to work.
10. On August 30, 1996, the plaintiff returned to Dr. Oakley for a possible rupture on the repaired anterior cruciate ligament as a result of tripping over some toys at home. The plaintiff continues to require treatment for the right knee as a result of this injury.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of the employment on May 13, 1996. N.C. GEN. STAT. § 97-2(6).
2. As a result of the compensable injury, the plaintiff is entitled to temporary total disability compensation at the rate of $233.34 per week for the period from May 13, 1996 through July 18, 1996, which represents six weeks following the arthroscopic procedure on June 6, 1996. N.C. GEN. STAT. § 97-29. Defendant is entitled to a credit for temporary total disability compensation paid pursuant to the Form 60.
3. The plaintiff is entitled to have the defendant pay for medical expenses incurred through June 6, 1996, including the arthroscopic procedure, as a result of the compensable injury as may be required to provide relief, effect a cure or lessen his period of disability. N.C. GEN. STAT. § 97-2(19). However, the plaintiff has failed to carry the burden of proof to establish that the reconstructive surgery of the anterior cruciate ligament was causally related to the May 13, 1996 injury or that the pre-existing knee instability was aggravated by the injury of May 13, 1996. Therefore, he is not entitled to have defendant pay for this treatment.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendant shall pay temporary total disability compensation to the plaintiff at the rate of $233.34 per week for the period from May 13, 1996 through July 18, 1996. As much of said compensation as has accrued shall be paid in a lump sum, subject to a credit for compensation paid by defendant pursuant to the Form 60. However, plaintiff's claim for additional benefits is, and under the law must be, DENIED.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
3. Defendant shall pay medical expenses incurred as a result of the compensable injury of May 13, 1996, including the diagnostic arthroscopic procedure on June 6, 1996, when bills for the same have been approved, in accordance with the provisions of the Act.
4. Defendant shall pay the costs.
This the _____ day of May 1998.
 S/ _________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________ KIM CRAMER DEPUTY COMMISSIONER
DCS:bjp